Carole O'LOGHLIN, Plaintiff–Appellant,

v.

COUNTY OF ORANGE, Defendant–Appellee.

No. 98–56774.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 2000.

Filed Oct. 6, 2000.

872

DeAnna S. Dotson, Mililani, Hawaii, for the plaintiff-appellant.

William F. Bernard, Santa Ana, California, for the defendant-appellee.

Before: CANBY, NOONAN, and W. FLETCHER, Circuit Judges.

W. FLETCHER, Circuit Judge:

Carole O'Loghlin appeals the dismissal of her claim against defendant Orange County under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. The district court dismissed O'Loghlin's

complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), holding that her claim, in its entirety, was discharged in the County's bankruptcy proceeding.

O'Loghlin alleges violations of the ADA both before and after the date of discharge. We hold that the district court's dismissal of O'Loghlin's claim was proper insofar as it pertained to the County's alleged pre-discharge violations. However, we hold that dismissal of her claim was improper insofar as it pertained to an alleged post-discharge violation, even though the post-discharge violation was a continuation of the County's allegedly illegal pre-discharge behavior.

I

Beginning in November 1989, O'Loghlin worked for Orange County as a registered nurse in the Evaluation Treatment Service (ETS), a psychiatric emergency facility. In April 1992, a violent patient injured her right arm. A year later, another violent patient injured the same arm. O'Loghlin had surgery following each injury and has now lost substantial use of the arm because of nerve damage.

O'Loghlin alleges three separate episodes in which the County failed to accommodate the disability resulting from her injured arm. First, in June 1994, O'Loghlin's treating physician released her to return to work, but with the restriction that she not return to work at the ETS. Her supervisor told her either to disregard this restriction or to get it changed. A nurse employed by the County met with O'Loghlin the next day and changed the restriction. O'Loghlin's supervisors then demanded that she return to work at the ETS. O'Loghlin did not return to work and remained on medical leave.

Second, in February 1996, the County asked O'Loghlin to see Dr. Loretta Lee, a physician employed by the County. Dr. Lee recommended that O'Loghlin not return to work at the ETS. The County then offered O'Loghlin her old job at the ETS with the purported accommodation that "she could back away from assaultive patients." O'Loghlin again did not return to work.

Third, in October 1996, the County arranged a second appointment with Dr. Lee. Dr. Lee recommended that O'Loghlin not return to work at the ETS unless the County hired a team of people to protect her. The County then instructed O'Loghlin to return to work at the ETS without any accommodation. O'Loghlin once again did not do so.

Orange County filed for bankruptcy on December 6, 1994. The County's reorganization plan was confirmed in June 1996, discharging its pre-confirmation debts. The first alleged failure to accommodate O'Loghlin's disability took place before the bankruptcy filing. The second alleged failure took place between filing and discharge. The third alleged failure took place after discharge.

O'Loghlin first contacted the Equal Employment Opportunity Commission (EEOC) by telephone on June 23, 1994. She signed her intake questionnaire on April 10, 1995, two hundred ninety-four days after the first alleged failure to provide reasonable accommodation for her disability. Her filing was thus timely. *See* 29 C.F.R. § 1601.13(a)(4)(ii)(B); *Casavantes v. California State Univ.*, 732 F.2d 1441, 1442–43 (9th Cir.1984). The EEOC issued O'Loghlin a right-to-sue letter on May 8, 1997.

O'Loghlin brought this action against the County alleging failure to accommodate in violation of 42 U.S.C. § 12117; discrimination in employment in violation of 42 U.S.C. § 1981; and deprivation of a property right in employment in violation of 42 U.S.C. § 1983. The district court dismissed the complaint under Rule 12(b)(6) on the ground that the claims were discharged in bankruptcy, but granted O'Loghlin leave to amend.

O'Loghlin filed an amended complaint alleging the same claims and providing more details concerning the second and third alleged failures to accommodate. The County again moved for dismissal pursuant to Rule 12(b)(6). The district court dismissed the complaint with prejudice. It held that O'Loghlin's claim arose under the ADA in June 1994, prior to the bankruptcy, and was therefore discharged. The court held that the second and third denials of accommodation were the "inevitable consequence" of the first denial, rather than actionable continuing violations of the ADA, and were also discharged.[1]

We review de novo dismissals for failure to state a claim under Rule 12(b)(6). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See Enesco Corp. v. Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir.1998). The district court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir.1999).

## II

■ Because defendant Orange County is a municipality, see 11 U.S.C. § 101(40), the applicable discharge provision is 11 U.S.C. § 944(b). Section 944(b) provides that "the debtor is discharged from all debts as of the time when . . . the plan is confirmed. . . ." As used in both §§ 1141(d) and 944(b),[2] "debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, se-

cured, or unsecured." 11 U.S.C. § 101(5). This "broadest possible definition of claim is designed to ensure that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." Siegel v. Federal Home Loan Mortgage Corp., 143 F.3d 525, 532 (9th Cir.1998) (internal quotation marks omitted).

■ Insofar as O'Loghlin's ADA claim against the County is based on pre-discharge violations of the ADA, we agree with the district court that it is a "claim" within the definition of § 101(5), even though O'Loghlin did not receive her right-to-sue letter until after the County's debts had been discharged. In so holding, we agree with the Eighth Circuit that a claim arises, for purposes of discharge in bankruptcy, at the time of the events giving rise to the claim, not at the time plaintiff is first able to file suit on the claim. See McSherry v. Trans World Airlines, Inc., 81 F.3d 739, 741 (8th Cir.1996) ("[T]he right to sue letter is merely a jurisdictional prerequisite, and does not create a claim. Instead, . . . the claim was created . . . when McSherry was terminated.").

■ O'Loghlin's claim that the County violated the ADA after its debts were discharged in bankruptcy, however, stands on a different footing. The County argued to the district court and to us that because its alleged failures to accommodate O'Loghlin were part of a continuing course of conduct that took place both before and after discharge, it is not liable for its post-discharge conduct. Somewhat to our surprise, we have been unable to find any case precisely on point in this circuit or elsewhere. In this case of first impression, we hold that the County is liable for

---

1. O'Loghlin's arguments on appeal are devoted exclusively to the dismissal of her ADA claim. By not arguing the impropriety of the dismissal of her discrimination and property right claims, she has abandoned these claims. See Acosta–Huerta v. Estelle, 7 F.3d 139, 144 (9th Cir.1992) (amended opinion).

2. In dismissing O'Loghlin's complaint, the district court mistakenly relied on 11 U.S.C. § 1141(d), the general bankruptcy provision for the discharge of debts, but the difference between that statute and § 944(b) is not material to this case.

post-discharge conduct that violated the ADA.

In the absence of any controlling authority, the district court found the closest analogy in statute-of-limitation cases under Title VII. It specifically relied on *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), in which the Supreme Court held that the statute of limitations began to run in a Title VII case when a decision to deny tenure was made and communicated to a professor rather than at the time the professor's employment ended. The district court wrote,

> In *Ricks*, the Court held that the plaintiff's discharge was the 'delayed, but inevitable, consequence of the denial of [plaintiff's] tenure.' [449 U.S.] at 257–58[, 101 S.Ct. 498]. Similarly, here, defendant's repeated refusals to satisfy plaintiff's persistent complaints were the 'delayed, but inevitable consequence[s]' of defendant's original June 1994 decision.

We believe that reliance on *Ricks* is misplaced.

■ *Ricks* does not provide the closest analogy, for it involved a single act of alleged discrimination: the denial of tenure. Plaintiff in this case alleges not a single failure, but repeated failures, to accommodate. Under the continuing violation doctrine in this circuit, if a discriminatory act takes place within the limitations period and that act is "related and similar to" acts that took place outside the limitations period, all the related acts-including the earlier acts-are actionable as part of a continuing violation. *Anderson v. Reno*, 190 F.3d 930, 936 (9th Cir.1999); *see also Fielder v. UAL Corp.*, 218 F.3d 973, 987–88 (9th Cir.2000); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108–11 (9th Cir.1998).

An analogy to the continuing violation doctrine suggests the opposite result from that reached by the district court. A consequence of the continuing violations doctrine is that a defendant cannot insulate itself from liability by engaging in a series of related violations of Title VII and asserting that the statute of limitations has run for all violations as soon as the limitations period has run for the first violation in the series. This consequence suggests that an important purpose of the continuing violation doctrine is to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort.

The district court's holding would allow a defendant to use pre-discharge violations of the ADA to insulate itself from liability for post-discharge violations, so long as the pre- and post-discharge violations were part of the same course of conduct. Under this holding, the County would be advantaged by its own earlier violation of the ADA, for if the County had not violated the ADA during the pre-discharge period it would clearly be liable for a violation in the post-discharge period. To put it another way, this holding would disadvantage-indeed, doubly disadvantage-O'Loghlin. Not only would O'Loghlin be unable to recover damages for the County's pre-discharge violations of her rights under the ADA; she would also be unable to recover damages for the County's post-discharge violation of those same rights.

The bankruptcy laws provide no justification for such a result. Their purpose is to provide a "fresh start" to a discharged debtor. *United States v. Sotelo*, 436 U.S. 268, 280, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978); *Kokoszka v. Belford*, 417 U.S. 642, 645–646, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). A suit for illegal conduct occurring after discharge threatens neither the letter nor the spirit of the bankruptcy laws. A "fresh start" means only that; it does not mean a continuing licence to violate the law.

### III

■ O'Loghlin has alleged facts in her amended complaint that, if proved, would

support a finding that the County's failure to accommodate her disability in October 1996 violated the ADA. O'Loghlin may recover damages for that violation, despite the County's discharge in bankruptcy, under two possible scenarios. First, if the violation was sufficiently independent of the pre-discharge violations that it did not constitute part of a continuing violation of the ADA, O'Loghlin may recover damages beginning from the date of the violation. Second, if the violation was so related to the pre-discharge violations that the pre- and post-discharge conduct constitutes a continuing violation, O'Loghlin may recover damages from the date of discharge. Under the second scenario, the actionable part of the violation begins at the moment of discharge, not at the time of the later overt violation, for the violation is continuous over the entire pre- and post-discharge period. Evidence of violation in the pre-discharge period is, of course, relevant to the continuing nature of the violation, even though no damages may be rewarded for that earlier period.

■ The ADA and Title VII (after which the ADA was modeled) pose an unusual procedural problem in a post-discharge continuing violation case. As a prerequisite to suit, the ADA and Title VII both require the filing of a charge and the issuance of a right-to-sue letter. In this case, O'Loghlin did file a charge and did receive her right-to-sue letter from the EEOC. Both the original charge and letter were based on the June 1994 alleged failure to accommodate for which the County was discharged in bankruptcy. Following *McSherry, see* 81 F.3d at 741, we hold today that the inability of O'Loghlin to file suit before the issuance of the right-to-sue letter does not save her pre-discharge claims. But the issuance of the right-to-sue letter is nonetheless relevant to her post-discharge suit.

So long as the County's post-discharge failure to accommodate is within the scope of the already-issued right-to-sue letter, O'Loghlin may pursue her claim for post-discharge violation of the ADA without having to obtain a new right-to-sue letter based on the post-discharge behavior. *See Brown v. Puget Sound Electrical Apprenticeship & Training Trust,* 732 F.2d 726, 729 (9th Cir.1984) (to be within the scope of charge in a right-to-sue letter, a later violation must be " 'like or reasonably related to the allegations of the EEOC charge' ") (quoting *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973)). The purposes of the charge to the EEOC and of the right-to-sue letter have already been served, for the County was given timely notice of the nature of O'Loghlin's claim, and the parties have had an opportunity for voluntary compliance and informal conciliation.

To require O'Loghlin to obtain a new right-to-sue letter would be to give the County a procedural advantage from its discharge comparable to the substantive advantage we have already declined to give. In holding that O'Loghlin has a valid claim based on a post-discharge violation of the ADA, we reasoned that a discharge should not make O'Loghlin substantively worse off in the post-discharge period than she would have been absent the discharge. Similarly, O'Loghlin should not be procedurally worse off as a result of the discharge. The County should not be able to insist that O'Loghlin obtain a new right-to-sue letter when, absent bankruptcy, the County would not have been able to do so. " 'To require a second "filing" by the aggrieved party ... would serve no purpose other than the creation of an additional procedural technicality.' " *Ramirez v. National Distillers & Chem. Corp.,* 586 F.2d 1315, 1320 (9th Cir.1978) (quoting *Love v. Pullman Co.,* 404 U.S. 522, 526, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)).

We therefore hold that O'Loghlin may proceed with her claim based on the County's alleged post-discharge violation of the ADA, and that she may do so without obtaining a new right-to-sue letter from the EEOC.

## IV

We AFFIRM the district court's dismissal of O'Loghlin's complaint insofar as it is based on pre-discharge violations of the ADA by the County. We REVERSE the dismissal insofar as it is based on a post-discharge violation of the ADA by the County. We REMAND for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.